UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD MORROW,

    Plaintiff,

v.

AI-CARES, LLC,

    Defendant.

_____/

Case No. 2:17-cv-10057

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT IN THE ALTERNATIVE [15]**

Plaintiff Donald Morrow sued Defendant AI-Cares, LLC (AIC) for interference and retaliation under the Family Medical Leave Act (FMLA), disability discrimination under the Americans with Disabilities Act (ADA) and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), and failure to accommodate a disability under the ADA. AIC now moves to dismiss, or alternatively for summary judgment. For the following reasons, the Court will grant in part and deny in part the motion.

**BACKGROUND**

Morrow began working for AIC in July 2015. ECF 1 ¶ 9. Morrow claims that on August 10, 2016 he injured his knee at work. *Id.* ¶ 12. The next day, Morrow visited a physician, Dr. Joyce Stevens, who wrote a letter to excuse him from work until August 15. ECF 15-6. Morrow complained that he was still in pain when he returned to work on the 15th, so AIC sent him for a follow-up appointment at Genesys Occupational Health Network. A Genesys doctor gave Morrow permission to return to work, with some restrictions: no climbing,

limited walking, and work only in a seated position. ECF 15-7, PgID 92. The note scheduled Morrow for a follow-up examination on August 19. *Id.*

According to Morrow, on August 15 he provided the Genesys doctor's note to his supervisor, Ed Ritter, who told him that AIC could not accommodate the restrictions and he could not work until they were lifted. ECF 17-2, ¶ 13. Unable to work, Morrow alleges he requested leave until August 19 when the restrictions ended, and Ritter agreed. *Id.* ¶ 15. Morrow claims "Ritter also told [Morrow] that [AIC] does not like when employees get injured at work and they usually find a way to terminate [them]." *Id.* ¶ 28.

Conversely, AIC denies that Morrow provided the Genesys note to Ritter, that Ritter granted Morrow leave, and that he made the statements about injured employees. ECF 18, PgID 215. Instead, they contend these events could not have occurred because Morrow never returned to work after his Genesys appointment. *Id.*

While the parties agree Morrow called in sick from August 16 through 19, they disagree about what was said during the calls. On August 17, Morrow spoke with AIC human resources representative Lisa McQuillin about his absences. Morrow alleges he told McQuillin he was absent because "Ritter told me there was no work for me with [the] restrictions." ECF 17-2, ¶ 21. He also claims that he told McQuillin "the job I was assigned to injured my left knee and if there was another job I could do in the plant that I would like to be assigned to that job." *Id.* ¶ 22. According to AIC, however, Morrow told McQuillin "he didn't want to work here anymore" and "he didn't want to do this type of work any longer." ECF 15-9, PgID 99. McQuillin's notes recorded these comments and also indicate she asked Morrow to come in and complete an exit survey. *Id.* AIC considered Morrow's statements to be a resignation and posted Morrow's job as available. *Id.*

2

Morrow claims he never said he quit or resigned when he spoke to McQuillin on August 17, and that McQuillin never asked him to complete an exit survey. ECF 17-2, ¶¶ 22–23. He also called in sick again on the 18th and 19th, only to be told by McQuillin that he had already quit, which he denied. *Id.* ¶¶ 24–25. AIC contends that Morrow called on these days to ask for his job back. ECF 15-9, PgID 99.

On August 30, AIC sent Morrow a letter regarding his "Voluntary Resignation/Loss of Seniority." ECF 17-3, PgID 184. The letter explained that Morrow's "employment with [AIC] ha[d] been terminated effective August 26" because he had voluntary resigned on August 17 and also because he was "having difficulty keeping up with the speed required for the position." *Id.* Following the termination letter, Morrow filed an EEOC charge in November 2016, but the EEOC dismissed the charge. ECF 15-14, PgID 112. Morrow then filed suit. AIC's timely motion to dismiss, or for summary judgment, followed.

## LEGAL STANDARD

AIC moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgement under Rule 56. A decision on a Rule 12(b)(6) motion must "be undertaken without resort to matters outside the pleadings," though the Court may "consider . . . exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Here, AIC's motion cannot be resolved without looking outside the pleadings. AIC's argument relies heavily on McQuillin's notes, but these are not referenced in Morrow's complaint, nor are they central to Morrow's claims, and therefore cannot be considered on a motion to dismiss. Accordingly, the Court will treat the motion as one for summary judgment.

3

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met their burden, the non-moving party may not simply rest on the pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an "essential element[] of a cause of action or defense[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quotations omitted). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court views the facts and draws all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## DISCUSSION

AIC makes three arguments: (1) Morrow's voluntary resignation precludes his FMLA, ADA, and PWDCRA claims; (2) Morrow's FMLA claims fail because he did not provide proper notice; and (3) Morrow's ADA claim fails because he is not disabled. "Michigan's [PWDCRA] substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–15 (6th Cir. 2012). Since neither party has argued

4

that the PWDCRA and ADA claims should be resolved separately, the Court considers them together, and will omit reference to the PWDCRA when discussing the claims brought under both laws.

I.  Did Morrow Resign?

AIC's central argument is that Morrow cannot bring a claim under the FMLA or ADA because he voluntarily resigned during the August 17 phone call with Lisa McQuillin. "When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the ADA or the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999); *see also Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014) (FMLA interference claims); *Demyanovich v. Cadon Plating & Coating, L.L.C.*, 747 F.3d 419, 432–33 (6th Cir. 2014) (FMLA retaliation claims and ADA claims). To determine whether an employee resigned or was terminated, the Court looks to state law. *See Hammon*, 165 F.3d at 447.

Under Michigan law, no formal acceptance is required to give a resignation effect, and it is the employer's decision to accept the retraction of a resignation. *See Schultz v. Oakland Cty.*, 187 Mich. App. 96, 102 (1991). Resignation must be a voluntary act; "an employee voluntarily leaves his or her job if the separation is the product of the employee's hopes, wishes, and intent to quit." *Logan v. Manpower of Lansing, Inc.*, 304 Mich. App. 550, 558 (2014) (quotations omitted).

As evidence of Morrow's resignation, AIC first points to McQuillin's notes from her August 17 phone call with Morrow. These notes recorded Morrow's statement that "he didn't want to work here anymore" and "he didn't want to do this type of work any longer." ECF 15-9, PgID 99. Second, AIC alleges that—shortly after Morrow spoke with McQuillin

5

on August 17—the Union Chairperson Lorie Velasquez tried to negotiate the terms of Morrow's resignation, as documented in McQuillin's notes. *Id.* No affidavit or deposition of Velasquez has been taken. Third, AIC points to the EEOC's dismissal of Morrow's age and disability discrimination charge, ECF 15-14, PgID 112, as further evidence that his allegations are unsupported by fact.

In response, Morrow denies that he resigned during his August 17 phone call with McQuillin. He contends that her "notes do not accurately reflect what was said by me or her." ECF 17-2, ¶ 17. Morrow relies primarily on his own affidavit, which states "I never stated to anyone employed with AI Cares, LLC that I resigned or quit." *Id.* ¶ 23. He also denies that McQuillin asked him to fill out an exit survey. *Id.* ¶ 22.

In addition to his affidavit, Morrow provides three pieces of circumstantial evidence to show that he did not resign. First, Morrow points to McQuillin's notes showing that he called in sick on August 18 and 19. ECF 17-10, PgID 203. No one who has just quit, he argues, would continue to call in sick. Second, Morrow refers to the Genesys Health evaluation from August 19 clearing him to return to work without restriction. ECF 17-8, PgID 199. Morrow again posits that a person who had just quit his job would not go to a doctor's appointment clearing him to return to that very job. Lastly, Morrow argues that under Mich. Comp. Laws § 421.29 an employee cannot receive unemployment benefits if he voluntarily leaves a job. Because he received unemployment benefits, he argues he could not have left AIC voluntarily.

AIC counters that Morrow's affidavit alone is insufficient to withstand its properly supported motion for summary judgment, and cites to *Quinto v. Cross & Peters Co.*, 451 Mich. 358 (1996). In *Quinto*, the court held that an affidavit containing purely conclusory

statements is not enough to create a genuine issue of material fact. *Id.* at 371–72. Although "the standards governing the grant of summary judgment in Michigan state courts are identical to those governing summary judgment in federal court," *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501 (6th Cir. 2007), the facts of *Quinto* are inapposite. Unlike in *Quinto*, the parties here have not completed discovery, and more evidence (perhaps from Velasquez) is likely forthcoming. More importantly, Morrow's affidavit is far more specific than the *Quinto* plaintiff's, which "disclosed no specific instances" to support her claims and "did not describe with particularity when, where, or how plaintiff was harassed." *Quinto*, 451 Mich. at 370–71. Conversely, Morrow's affidavit alleges the who, what, where, when, and how of the FMLA and ADA violations, including specific conversations he had with McQuillin and Ritter.

Lastly, the *Quinto* plaintiff offered nothing besides the conclusory affidavit to create a triable question of fact. *Id.* at 370. But Morrow points to additional, albeit circumstantial, evidence to support his claim: McQuillin's notes showing Morrow called in sick on August 18 and 19 after he allegedly quit; the Genesys evaluation from August 19 stating Morrow could return to work without restrictions; and the unemployment benefits that Morrow received. That evidence, coupled with Morrow's affidavit, creates a triable issue of fact as to whether Morrow resigned.

II.   <u>Did Morrow Provide Proper Notice?</u>

Next, AIC contends Morrow's FMLA interference claim fails because Morrow did not provide the required notice. According to AIC, Morrow failed to provide initial notice of his intent to take leave, and then refused to provide certification of his injury from a health-care provider.

7

For an employee requesting FMLA leave for the first time, the burden to provide notice is not heavy. *See Wallace*, 764 F.3d at 586. The employee need only "give the employer enough information for the employer to reasonably conclude that an [FMLA event] has occurred." *Id.* (quotations omitted). To verify a FMLA leave event, an employer may request—in writing—that "an employee provide medical certification that she is suffering from a serious medical condition." *Id.* at 588 (citing 29 C.F.R. § 825.305(a) (2017)). The request must "detail[] the specific expectations and obligations of the employee and explain[] any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c).

Morrow has presented enough evidence to create a genuine issue of material fact regarding notice. Morrow informed AIC that he was injured and needed time off from work, which the note from Dr. Stevens tended to show. ECF 15-6. It was not necessary for Morrow to invoke the FMLA by name, and a jury could find that his request for time off work coupled with the doctor's note was enough for AIC to "reasonably conclude that an [FMLA event] ha[d] occurred." *Wallace*, 764 F.3d at 586. While it is less clear whether Morrow provided certification of his injury, AIC provides no evidence that they requested—in writing—certification from Morrow's physician or explained the consequences if he did not provide the certification. Because Morrow has established a material question of fact regarding notice, his FMLA claim survives summary judgment.

III.   Is Morrow Disabled?

AIC argues that Morrow is not disabled under the ADA. But AIC relies heavily on case law that has been overruled by the 2008 amendments to the ADA. *See* ECF 15, PgID 71–74. The ADA—as amended in 2008—provides that an employee is disabled when they

8

suffer from "physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1) (2009)). The ADA lists qualifying major life activities, including "performing manual tasks," "sleeping," "walking," "standing," and "working." 42 U.S.C. § 12102(2)(A). Courts construe this standard "in favor of broad coverage of individuals." 42 U.S.C. § 12102(2)(A).

Under the amended standard for disability, the ADA may cover impairments lasting "fewer than six months." 29 C.F.R. § 1630.2(j)(1)(ix) (2017). Short-term impairments "are typically not covered," but "may be covered if sufficiently severe." *Id.* at § 1630.2(j)(1)(ix)(app.). For example, "an impairment resulting in a 20–pound lifting restriction that lasts or is expected to last for several months" could qualify as a disability. *Id.*

Here, Morrow alleges that after his injury he was unable to walk long distances or climb, and had difficulty sleeping due to the pain. ECF 1 ¶ 15. In support, Morrow submitted a note from Dr. Stevens that excused Morrow from work for five days but offered no medical diagnosis. ECF 17-6, PgID 195. Also, Morrow submitted a Genesys physician's evaluation that restricted Morrow's work activities—sitting duties only, limited walking, and no climbing—due to "knee injury." ECF 17-7, PgID 197. As Morrow acknowledges, the Genesys physician lifted all restrictions on August 19, nine days after his initial injury. ECF 1, ¶ 14.

It is undisputed that Morrow's restrictions lasted nine days. *Id.* He presents no documentation of surgery, medication, or therapy. Even under the broadened post-2008 ADA standards for disability, Morrow's claim falls short. *See Deister v. AAA Auto Club of Mich.*, 91 F. Supp. 3d 905, 916–18 (E.D. Mich. 2015), *aff'd sub nom., Deister v. Auto Club*

*Ins. Ass'n*, 647 F. App'x 652 (6th Cir. 2016) (finding disability properly alleged by plaintiff diagnosed with "recurrent depression" and out of work for around five months); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330 (4th Cir. 2014) (holding that a serious leg injury requiring multiple surgeries, pain medication, and physical therapy and prohibiting normal walking for at least seven months constituted a disability under the ADA). Minor, short-term impairments like Morrow's knee injury do not qualify as a disability. *See* 29 C.F.R. §§ 1630.2(j)(1)(ix), (app.). Morrow has not produced any medical records beyond the Stevens note and the Genesys evaluation. The Court concludes that Morrow has failed to provide sufficient documentary evidence to show a triable question of fact regarding his claimed disability. Accordingly, the Court will grant the motion for summary judgment as to Counts II, III, and IV.

It is apparent that the dispute between Morrow and his employer arose from, among other things, misunderstanding and poor communication. Both parties face risk and a great deal of expense from further litigation. The Court has concluded the case would benefit from mediation and will appoint attorney Patrick G. Seyferth to conduct mediation and conflict resolution in the case unless either party objects within ten days.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss or for summary judgment in the alternative [15] is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Court **GRANTS** summary judgment in favor of Defendant on Counts II, III, and IV of the complaint.

**IT IS FURTHER ORDERED** that the Court **DENIES** summary judgment on Count I.

**IT IS FURTHER ORDERED** that the parties shall **CONTACT** Attorney Patrick G. Seyferth (seyferth@bsplaw.com, 248-822-7800) no later than **August 7, 2017** to schedule mediation. The parties shall conduct mediation with Mr. Seyferth no later than **September 8, 2017** or as otherwise set by Mr. Seyferth.

Mr. Seyferth shall **NOTIFY** the Court once mediation is scheduled and **NOTIFY** the Court within seven days of completion of mediation, stating only the date of completion, who participated, whether settlement was reached, and whether further alternative dispute resolution proceedings are contemplated. E.D. Mich. LR 16.4(e)(6). If a settlement is reached, the parties shall **SUBMIT** a proposed order of dismissal within 21 days. *Id.* at 16.4(e)(7).

**SO ORDERED**.

                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: July 28, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 28, 2017, by electronic and/or ordinary mail.

                                        s/David P. Parker
                                        Case Manager